## J. E. HEAD v. THE STATE.

### No. 3505. Decided April 14, 1915.

**Carrying Pistol.—Want of Criminal Intent—Charge of Court.**

Where, upon trial of unlawfully carrying a pistol, the evidence did not show a violation of the pistol law, but that defendant was carrying the pistol to a third party who had purchased it, and did not materially deviate from his course of travel to carry out his purpose, although he became involved in a personal difficulty, and defendant requested special charges to cover this phase of the case, which was refused by the court, whose charge was upon the weight of the evidence, the same was reversible error.

Appeal from the County Court of Wood. Tried below before the Hon. R. E. Bozeman.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Harris & Britton,* for appellant.—On question of innocent intent and charge of court: Snider v. State, 43 S. W. Rep., 84; Bowles v. State, 66 Texas Crim. Rep., 550, 147 S. W. Rep., 869; Morris v. State, 73 Texas Crim. Rep., 67, 163 S. W. Rep., 709; Guy v. State, 170 S. W. Rep., 303.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—The undisputed facts show that appellant had on his person and exhibited a pistol. For this he was charged with violating the pistol law.

The record discloses that appellant had married the daughter of the alleged assaulted party, Chadwick, and that Chadwick, acting as agent of another party, had sued appellant for his, appellant's, home. There seems to have been no friction between the parties with reference to the matter until the morning appellant was seen with the pistol. The assaulted party and his brother-in-law went to town as did appellant. Neither seems to have known the other was going, and met accidentally on the street. Appellant and his father-in-law, at request of appellant, stepped to one side near the rear end of a store and engaged in a conversation with reference to the litigation. Chadwick claims appel-

lant was in the wrong in what occurred, and that he used harsh language. Appellant's side of the case is that Chadwick used vigorous and insulting language and drew his knife on him, at which time he exhibited his pistol. Appellant's theory of the case is, that so far as the difficulty between he and his father-in-law was concerned, he acted purely in self-defense. He is supported in this by the testimony of other witnesses. Be that as it may, appellant's reason for having the pistol may be briefly stated thus: he had made a trade with a merchant there in the town to pay for a yearling owned by the merchant with the pistol, the merchant having agreed to take the pistol in exchange for the yearling, or as part pay. That he had on this occasion gone to town and carried the pistol, and was en route to the merchant's store, going down the street or sidewalk, when he met his father-in-law or came in touch with him, which led to the conversation and trouble already mentioned. He is supported in this by the merchant, who testified to the same facts as did appellant with reference to taking the animal for the pistol. This is the case in a nutshell.

If appellant carried the pistol to deliver it to the man to whom he had traded it he did not violate the law, and the fact that he engaged in a difficulty with his father-in-law in which the pistol was used would not change that statement. He may have been in the wrong or not in reference to using the pistol in a difficulty with his father-in-law, but if he had a right to carry the pistol legally to deliver to the purchaser, then the mere fact that he engaged in a difficulty with another party would not make him liable for violating the pistol law. With reference to this matter the court instructed the jury as follows:

"You are further instructed that if you believe beyond a reasonable doubt that the defendant had on his person a pistol as charged, but if you further believe from the evidence that the defendant had sold or agreed to sell said pistol to Martin Pruitt and that at the time he was seen with the same he was proceeding on his way to deliver same to the said Pruitt along a route not the most direct, but the route a person would usually or ordinarily travel in going from the home of defendant to Pruitt's place of business in the town of Hawkins, you will acquit the defendant, and this though you may believe from the evidence that defendant while thus proceeding on his way to Pruitt's became involved in a difficulty with one Chadwick and that in said difficulty defendant used said pistol as a weapon of offense or defense. The right or wrong of the defendant's said acts in said difficulty will not be considered by you as determining the guilt or innocence of defendant in this case, except in so far as they may show or tend to show, if they do, the purpose of defendant in having said pistol; and if upon the whole of the evidence, not considering the right or wrong of defendant's acts in said difficulty, you have a reasonable doubt of defendant's guilt, you will acquit him.

"You are charged that while the defendant would have the right

to carry said pistol from his home to the place of business of Pruitt if he had sold same or agreed to sell same to said Pruitt, it would be his duty, while he so carried it to proceed on his way to the said Pruitt within a reasonable time after he left his home and along a route a person would usually or ordinarily travel in going to said Pruitt's from his home and he would not have the right to turn aside or deflect from the route he was so traveling in going from his home to Pruitt's place of business and voluntarily engage in a quarrel or fight with another person; and this although you may believe from the evidence that the defendant was lawfully carrying said pistol up to such time."

All sorts of objections were raised to the court's charge. Appellant sought numerous instructions to correct what he believed to be the errors of the above charges; among others, he asked the court to instruct the jury that he had a right to carry the pistol on his person for the purpose of delivering it to Pruitt if he had traded or leased it to him, and for this reason he had a right to carry and deliver it, winding up that charge with this quotation: "Now, therefore, if you believe from the evidence that on the time and occasion testified about, the defendant, J. E. Head, carried on or about his person a pistol for the purpose of delivering or turning the same over to Marvin Pruitt, to whom he had sold, traded or leased said pistol, or if you have a reasonable doubt on this point, it will be your duty to acquit." Again, after stating that the law authorizes a person to deliver the pistol he has sold, this quotation is made from a requested instruction: "Now, therefore, if you believe from the evidence in this case that prior to the time and occasion testified about the defendant, J. E. Head, had traded, sold or leased a pistol to the witness Marvin Pruitt, and if you further find that the defendant, J. E. Head, carried said pistol from his home to the town of Hawkins at the time and occasion in question for the purpose of delivering or turning the same over to the said Marvin Pruitt, or for the purpose of consummating a deal which you may find they had been negotiating as to said pistol, or if you have a reasonable doubt upon this point, then it will be your duty to acquit the defendant." He also asked a special instruction to the jury that they should not consider the fact that defendant fired the pistol on the time and occasion in question as evidence of the fact that he unlawfully carried it. These instructions were repeated in different ways. He also asked this instruction: "You are instructed that if you find that the defendant, on the occasion in question, had traded, sold, or leased said pistol to Marvin Pruitt, and that the defendant was carrying said pistol for the purpose of delivering same to said Pruitt, and you further find that he, the defendant, went to the back end of Thorn & Page's store, that would not, in law, be such deviation from the most direct course as would render the defendant guilty of unlawful carrying said pistol."

We are of the opinion that the court's charge was on the weight of the evidence, and that appellant's special charges more correctly state the law. The undisputed facts show that when the parties met on the

street, that appellant and Chadwick, his father-in-law, went to the rear end of the store mentioned and engaged in a conversation about the law suit. Their version of that conversation as to what occurred is widely variant. That was a deflection from the route he was traveling, the distance being from the street to the rear end of the store, but at the time he met his father-in-law he was going directly to Pruitt's store. The court's charge seems to be on the weight of the evidence, and more of an argument than a charge on the law. Of course, if appellant was carrying the pistol to deliver to Pruitt, that short diversion or deflection from his line under the circumstances stated, in our opinion, does not constitute a violation of the law. Of course, if he was not carrying the pistol to Pruitt, it would be a violation of the law whether he went with his father-in-law to the rear end of the store or not. The evidence not only does not show that he was seeking his father-in-law, as we understand the facts, but he did not know he would be in town, and that the meeting was purely accidental. In the writer's opinion the evidence does not show a violation of the law. It is not one of those cases that is brought within the authorities that show a violation of the law where the party turned aside from his main line of travel or the route or line of travel. Upon another trial, however, from any viewpoint, the charge of the court should not be on the weight of the evidence and argumentative on the facts, but directed to the law of the case.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*